### PREYER v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. November 9, 1920).

No. 1793.

**Intoxicating liquors ⬅236(5)—Evidence of possession insufficient to warrant inference liquors were destined to point within state.**

In prosecution for transporting intoxicating liquor into the state, contrary to the Reed Amendment (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 8739a, 10387a–10387c), evidence that the defendant was a Pullman car porter on a run extending through the state, and that the liquor

was found in his possession on the car, *held* insufficient to warrant the inference that the liquor was destined for points within the state, and therefore insufficient to sustain a conviction for violating the Reed Amendment.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Columbia; Henry A. Middleton Smith, Judge.

Henry J. Preyer was convicted of transporting liquor into the state of South Carolina, in violation of the Reed Amendment, and he brings error. Reversed and remanded, with instructions to grant a new trial.

S. M. Wetmore, of Florence, S. C., for plaintiff in error.

J. Waties Waring, Asst. U. S. Atty., of Charleston, S. C. (Francis H. Weston, U. S. Atty., of Columbia, S. C., on the brief), for the United States.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. Plaintiff in error, hereinafter referred to as defendant, was indicted for transporting liquor into the state of South Carolina, in violation of the Reed Amendment (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 8739a, 10387a–10387c). The alleged offense was committed and the first trial had before the decision of the Supreme Court in United States v. Gudger, 249 U. S. 373, 39 Sup. Ct. 323, 63 L. Ed. 653. At that time it was assumed that defendant would be guilty if he brought the liquor into South Carolina, though only for the purpose and in the course of carrying it through that state to another state. In consequence no issue was made as to the destination of the liquor and that question was not submitted to the jury. In view of this misconception of the law as afterwards declared by the Supreme Court, and because the proofs failed to show that the liquor claimed to have been found in defendant's possession, or any part of it, was intended to be delivered in South Carolina, this court reversed the judgment of conviction. 260 Fed. 157, 171 C. C. A. 193.

On the trial now under review the jury were properly instructed, but defendant was again convicted. The error here asserted is the refusal of the trial court to direct a verdict in his favor, on the ground that there was no evidence to sustain a finding that the liquor in question was destined to the state of South Carolina.

Defendant was the head porter of a Pullman sleeper running from Washington to Tampa, Fla., and was on duty at the time of his arrest. The sole witness for the government testified that he was the chief state constable of the Eastern district of South Carolina; that it was his duty to search for violations of the liquor laws, including the bringing of whisky into that state; that on the 10th of October, 1918, about 2 o'clock in the morning, he boarded Atlantic Coast Line train No. 85, south-bound, at Dillon, S. C., the first stop made by that train in the state; that he got on the day coach, and from there went through several Pullmans and into the one of which Preyer was head porter; that another porter was also there, a swing porter named Terry, who relieves the other porters on the run from Richmond to Charleston;

and that the conductor was not in that car. His further testimony in chief is as follows:

"I entered the car from the front door; went into the train. Preyer was midways of the Pullman car, stooping down about the middle. I had my flashlight, shining the flash down. He said, 'Howdye, Mr. Eichelberger; nothing doing.' I passed on back to the back of the car, where Terry was shining shoes. I left the smoker and came back, going to the front of the train; came to the locker, which is about as tall as a man, in the front of the car. I said, 'Preyer, I would like to see in there.' He said he didn't have the keys. I undid this bunch of keys here and said, 'I guess I have keys to fit it.' He backed up in this position, and said I couldn't see in there without the permission of the conductor. I asked him where the conductor was, and he said, 'The next car in front.' I left the car to go out— He said the conductor was in bed, in a berth in the drawing room; so just as I got out of the car the door was shut. I turned to go back, tried to undo it, and the door was locked. I couldn't get back in the car. About a minute or so later, Conductor Simpson, the conductor in charge of the train, came, out, and I hands him my ticket, and he smiled, and I went back in the car. Just as I got back in there, by this locker, I smelled the odor of liquor and looked down and saw a suitcase. This was the same locker which I had requested the defendant to open, which he had refused to open. There was a suitcase there open with a bottle of whisky broken in half, in two; some of the whisky was still in the bottle. The suitcase was right outside the door, right down on the floor, and Preyer was then about the middle of the car, shoving a suitcase under a berth. I came up and pulled the suitcase from under the berth; it was a straw suitcase, about 26 inches long. It contained rye whisky, 26 pints. Well, when I went on back there Preyer went in the smoker, and picked up the suitcase; he went on in the smoker, and as he went in the smoker Terry came out and went to the front of the train. I followed Terry, and when we got to the last berth, front of the train, he was pushing a suitcase under that. I looked at that suitcase; it was a straw suitcase and contained 24 pints of rye whisky. Then I went back to the smoker where Preyer was, and he was sitting on the long seat in the smoker, and had his hands behind him, like this, pushing down something, in this position; so I grabbed him by the hand and pulled it out, and his keys dropped out; and I reached over behind and there was a little black handbag—had 7 pints of whisky in it; rye whisky. In the broken bottle, and the 24 pints and the 26 pints and the 7 pints there was the same brand of whisky. All of it was in pints. When I got the bunch of keys in one hand, the little bag in the other, I came back—by that time we were nearing Florence. Preyer said he had passengers to get off the train going to Augusta; so I let him get the passengers off, and by the time the train was ready to go I called the man there and handed him the two suitcases of whisky; told him to take care of them for me. While Preyer was getting the passengers off, I was in the car. I kept him in sight, and watched him all the time, and Terry stayed there, too. The train went off, then, by the time he put the passengers off. I put the men under arrest, but the train didn't stop, so I couldn't get off the train until we got to Lanes. I saw the conductor when we got to Florence. I did not see any one else in the coach; that is, any other officials. I just saw the two porters, and Preyer is the man on trial here. I took both off at Lanes, put both under arrest, and searched and got three more suitcases of whisky out of the same Pullman car; rye whisky in pints. I don't remember what the total was in all of them. The total haul on the Pullman was 103 pints, all of the same brand and in pint bottles."

As nothing more unfavorable to defendant appears in the cross-examination of this witness, or elsewhere in the testimony, his statement comprises all there is of the government's case.

When the case was here before, we expressed the opinion that there was no substantial proof that the liquor claimed to have been found

in defendant's possession was destined to the state of South Carolina. That opinion is strengthened by examination of the present record, which certainly gives no greater support to the government's contention. It is therefore enough to say, without reviewing the evidence, that nothing is shown which in our judgment tends to prove, or from which a jury could reasonably infer, that he intended to deliver in that state any part of the liquor in question. The constable's testimony, at the most that can be claimed for it, is at least equally consistent with an intention on defendant's part to carry whatever liquor he had with him, if any, to the state of Florida, the destination of the car on which he was employed; and, that being so, there was failure to prove the charge laid in the indictment, and a verdict in his favor should have been directed.

The judgment will be reversed, and the cause remanded, with instructions to grant a new trial.

Reversed.